IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
FILE NO: _____

| | | |
|---|---|---|
| TERESSA FAX,<br>   Plaintiff,<br><br>v.<br><br>NORTH CAROLINA CENTRAL UNIVERSITY, UNIVERSITY OF NORTH CAROLINA BOARD OF GOVERNORS, VIVIANE ACKALL, in her individual capacity, PHILLIPH MUTISYA, in his individual capacity, DEKENDRICK MURRAY, in his individual capacity, JOHN SHORT, in his individual capacity, and MAUREEN SHORT, in her individual capacity.<br>   Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | COMPLAINT |

NOW COMES Plaintiff, Teressa Fax, by and through the undersigned counsel, and for her complaint against North Carolina Central University; the University of North Carolina Board of Governors; Viviane Ackall, in her individual capacity; Philliph Mutisya, in his individual capacity; DeKendrick Murray, in his individual capacity: John Short, in his individual capacity; and Maureen Short, in her individual capacity, and alleges and says as follows:

PARTIES

Case 1:25-cv-00508   Document 1   Filed 06/25/25   Page 1 of 45

1. Teressa Fax (hereinafter "Plaintiff" or "Plaintiff") is a citizen and resident of Tucson, Pima County, Arizona. Plaintiff is a qualified individual with a disability as defined by the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act of 1973. Specifically, Plaintiff is visually impaired, and her impairment substantially limits one or more major life activities.

2. Defendant, North Carolina Central University (hereinafter "Defendant NCCU" or "NCCU") is one of the campuses or universities of the University of North Carolina System (hereinafter "UNCS") and is in Durham County, North Carolina. It is a recipient of federal funds and is subject to the requirements of the ADA and Section 504 of the Rehabilitation Act. Defendant NCCU is responsible for ensuring that its programs, services, and activities are accessible to individuals with disabilities.

3. Pursuant to N.C. Gen. Stat. § 116-3, The University of North Carolina is a public multicampus university established and operated by the State of North Carolina and is a body politic and corporate, capable in law to be sued in all courts, and Defendant NCCU is one of the constituent institutions of the UNCS, capable in law to be sued in all courts whatsoever, with its principal office in Durham County, North Carolina.

4. The University of North Carolina Board of Governors ("Defendant Board of Governors" is the policy making body legally charged with the general

2

determination, control, supervision, management, and governance of affairs of the constituent institutions, including Defendant NCCU. Defendant Board of Governors is the policy-making body responsible for the governance, supervision, and management of Defendant NCCU. It is a public entity subject to the requirements of the ADA and Section 504 of the Rehabilitation Act.

5. Defendant Viviane Ackall (hereinafter "Defendant Ackall" or "Ackall") is Director for Student Accessibility Services of Defendant NCCU's Office of Student Accessibility Services and is being sued in her individual capacity. Upon information and belief, Defendant Ackall resides in Orange County. North Carolina. Defendant Ackall was responsible for ensuring that Plaintiff received her accommodations as a person with a disability.

6. Defendant Phillip Mutisya (hereinafter "Defendant Mutisya" or "Dr. Mutisya") was, at all times relevant to this action, a professor in the educational technology department at Defendant NCCU and is being sued in his individual capacity. Upon information and belief, Defendant Mutisya resides in Wake County, North Carolina. Defendant Mutisya is responsible for discriminating against Plaintiff on the basis of her disability.

7. Defendant Dekendrick Murray (hereinafter "Defendant Murray" or "Murray") is the Executive Director for Student Access & Success of Defendant NCCU's Office of Student Accessibility Services and is being sued in his individual

capacity. Upon information and belief, Defendant Murray resides in Durham County, North Carolina. Defendant Murray was responsible for ensuring that Plaintiff received her accommodations as a person with a disability.

8. Defendant John Short (hereinafter "Defendant J. Short" or "Dr. J. Short") was a professor of …. Upon information and belief, Defendant J. Short resides in Durham County, North Carolina. Defendant J. Short was responsible for discriminating against Plaintiff on the basis of her disability.

9. Defendant Maureen Short (hereinafter "Defendant M. Short" or "Dr. M. Short") was a professor in the Education Department at Defendant NCCU and is currently the interim department chair of curriculum and instruction. Upon information and belief, Defendant M. Short resides in Durham County, North Carolina. Defendant M. Short was responsible for discriminating against Plaintiff on the basis of her disability.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the claims arise under federal law, including the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

11. Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred within this

judicial district. Specifically, the alleged acts of discrimination and failure to provide reasonable accommodations took place in Durham, Durham County, North Carolina, which is situated within this district.

12. This Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367, as they are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

13. The Defendants are subject to personal jurisdiction in this district as they reside, conduct business, and/or operate within the jurisdiction of this Court.

<u>FACTUAL ALLEGATIONS</u>

14. Plaintiff is a person with a disability as defined by the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act of 1973 ("Section 504"). Specifically, Plaintiff is visually impaired, and her impairment substantially limits one or more major life activities, including reading, seeing, and accessing visual materials.

*Summer 2021*

15. In or about the summer of 2021, Plaintiff enrolled in the Master of Education for the Visually Impaired – Assistive Technology (hereinafter "Program") at NCCU. The program required students to engage with course materials, including visual

aids, diagrams, and other resources that were not accessible to visually impaired individuals.

16. Plaintiff took Structure and Function of the Eye for the summer 2021 session.

17. The Office of Student Accessibility Service ("SAS"), provides accommodations and support services to NCCU scholars with a learning difference, disabilities (e.g. physical, learning or psychological) or medical conditions.[1]

18. In or about June 2021, Plaintiff contacted the SAS to request reasonable accommodations necessary to ensure equal access to the Program. Specifically, Plaintiff requested extended time for tests, alternative text formats for visual materials, and audio descriptions for videos.

19. On or about June 15, 2021, Andre' Knight-McWilliams ("Knight-McWilliams") emailed Plaintiff, confirmed that she scheduled her intake meeting with the SAS, and advised that Defendant NCCU was "super exited to discuss the accommodations process with her, as well as assist you with your academic, personal and professional goals".  Knight-McWilliams also attached a copy of Plaintiff's Individual Student Success Plan ("ISSP").[2]

---

[1] North Carolina Central University, Office of Student Accessibility Services, https://www.nccu.edu/dsa/health-wellness/sas (last visited June 24, 2025)
[2] 2021_06_15_Knight-McWilliams Email to T. Fax, Subject: Student Success Plan

20. During the intake meeting, Plaintiff requested double time for tests and examinations, alternative text for images and diagrams, and audio descriptions for videos.

21. Knight-McWilliams informed Plaintiff that most extended time she could receive was time and a half. Consequently, SAS denied Plaintiff's request for double time, offering only time and a half.[3]

22. Defendant NCCU's denial of Plaintiff's reasonable request for double time in the Spring of 2021 caused challenges during her midterm exam and final exam and resulted in Plaintiff not achieving the grade commensurate with her mastery of the material.

23. Despite Plaintiff's requests, SAS failed to provide adequate accommodations for her disability. For example, in the course, Structure and Function of the Eye, Plaintiff was required to identify parts of the eye using photographs, which were inaccessible to her due to her visual impairment. Plaintiff requested alternative text descriptions for these images from SAS, but Knight-McWilliams claimed that no such technology was available. However, Knight-McWilliams agreed to speak with his supervisor, William Graham ("Graham"), the Accessibility Coordinator at the SAS, and follow up with Plaintiff.

---

[3] Plaintiff was granted double time later and after further discussion with SAS.

24. No alternative accommodations were offered to Plaintiff at this time.

25. Due to Knight-McWilliams' representations, and SAS' refusal to conduct appropriate research on the technology that exists, Plaintiff did not have access to the curriculum like her nondisabled peers, and she was not able to avail herself of the training and instruction of the program.

26. On or about June 17, 2021, Knight-McWilliams followed up with Plaintiff via email. In this correspondence, he indicated that he had, in fact, been in communication with his supervisor concerning finding assistive technology to help Plaintiff access the visual images and diagrams needed to complete her assignments.

27. Moreover, Knight-McWilliams advised Plaintiff "Unfortunately, the Student Accessibility Services Office does not have the requested assistive technology to translate images. If this becomes an issue, someone from our department will contact your professor to discuss alternative options to replace the visual images/diagrams."

28. Knight-McWilliams reminded Plaintiff to discuss her accommodations with her professor and notified her that he sent her "official accommodations letter".[4]

---

[4] 2021_06_17_Knight-McWilliams Email to T. Fax, Subject: Follow Up

29. The initial accommodations letter only allowed for extended time on tests, quizzes, and graded timed in-class assignments.

30. After this interaction, Plaintiff came to the realization that attending school as a blind person was going to be more of a challenge than she imagined.

31. On or about June 28, 2021, Defendant NCCU issued a second accommodations letter to Plaintiff, which included the same accommodations listed in the June 17, 2021, letter.

32. On or about July 7, 2021, Plaintiff emailed Knight-McWilliams, informed him that she still had accessibility issues that were restricting her access to the Program, and inquired about scheduling a follow-up appointment with her SAS counselor.[5]

33. Knight-McWilliams replied to Plaintiff the following day and advised her to schedule an appointment on the "student's portal accommodate."[6]

34. Plaintiff notified Knight-McWilliams that she needed to meet with "an actual counselor" and asked how to ensure that was the case.[7]

---

[5] 2021_07_07_T. Fax Email to Knight-McWilliams, Subject: Re: Follow Up
[6] 2021_07_08_Knight-McWilliams Email to T. Fax, Subject: Re: Follow Up
[7] 2021_07_08_T. Fax Email to Knight-McWilliams, Subject: Re: Follow Up

35. Knight-McWilliams asked Plaintiff if she wanted to schedule an appointment with Graham. Plaintiff confirmed that she did want to meet with Graham, and thanked Knight-McWilliams for his help.[8]

*Fall 2021*

36. On or about August 7, 2021, Plaintiff and, upon information and belief, other students with disabilities, received an email from Dr. Sean Tikkun, her advisor, stating the university was looking for a student to assist with their Visual Impairment Operations.

37. On or about August 16, 2021, Plaintiff, and, upon information and belief, other students with disabilities, received an email from Defendant Murray, the Accommodations Director at SAS, with updates from the SAS.

38. On or about August 24, 2021, Plaintiff emailed Martin Monson ("Monson"), her Braille professor, with her accommodations letter. She informed Monson that she could not read braille by sight, and the textbooks provided were not in a useable format for her to read by touch. Plaintiff requested to submit her homework with her braille display. Plaintiff concluded by asking to schedule a meeting with Monson to discuss how she could be successful in the class.

---

[8] 2021_07_08_Knight-McWilliams Email to T. Fax, Subject: Re: Follow Up

39. On or about August 25, 2021, Monson informed Plaintiff he had not received any communication from NCCU regarding her in-class accommodations, and he insisted that the course materials were accessible to Plaintiff.

40. On or about September 29, 2021, Plaintiff met with Defendant Murray to discuss the ongoing barriers to accessing course materials and completing tasks in her braille class with Monson.

41. Plaintiff explained there is a lack of communication from the professor, that he refused to come up with an accommodation for the final exam and that he told Plaintiff that since it was extra credit he would exempt the section. However, the professor was letting other, nondisabled, members of the class participate in the extra credit.

42. As a result of the University's failure to accommodate Plaintiff, she struggled academically and nearly failed her Braille class.

*Spring 2022*

43. Plaintiff continued to struggle to access her education during the spring 2022 semester.

44. For example, Plaintiff could not access TaskStream, a digital tool used by Defendant NCCU to gather assessments and student information.

45. On or about January 5, 2022, Sean Tikkun, PhD ("Dr. Tikkun") emailed his advisees, including Plaintiff, regarding the scheduling of two TaskStream

11

walkthrough sessions the following Wednesday from 4:00 PM until 5:00 PM., and another on that Thursday from 6:00 PM to 7:00 PM. Dr. Tikkun advised that the goal of the sessions was to ensure that all participants had access to TaskStream and understood how to use it.

46. On or about January 22, 2022, Murray emailed Plaintiff to inform her that he had "not forgotten her needs", that he had been out of the office due to being ill, and that he and others from SAS were scheduled to meet with at least one individual in her department the following week.

47. On or about January 23, 2022, William Wiener, Ph.D. ("Dr. Wiener"), Plaintiff's Psychosocial Aspects of Blindness professor, notified her that he still had not received an accommodations letter from SAS for her.

48. On or about February 17, 2022, Plaintiff emailed Murray. In her email, Plaintiff inquired about the numerous unresolved issues from her prior communications with Murray and the SAS office.

49. Plaintiff described that despite being informed that notes would be sent, she had yet to receive any. She expressed frustration over the lack of action, noting that the provision of these notes is documented in her accommodations letter.

50. Plaintiff also addressed the ongoing issue of obtaining alternative document formats and reiterated that this struggle was also present in the prior semester.

51. Plaintiff continued to face difficulties, particularly with PDFs that are not compatible with screen readers.

52. Plaintiff expressed concern that her professors may not be adequately trained to adjust the PDFs they used in their courses to ensure accessibility.

53. Plaintiff explained the excessive time she had to spend making the PDF documents usable despite her accommodation letter explicitly providing for alternative formats.

54. Despite previous assurances that the matter would be resolved, Defendant University continued to fail to provide Plaintiff with reasonable accommodations.

55. Plaintiff sought guidance on how to ensure that the ongoing issues were resolved, inquired about Defendant NCCU's plan to address the situations, and requested a specific date for when she could begin receiving services.

56. Plaintiff also requested that Murray and/or another SAS staff member contact Dr. M. Short, the Department Head, to facilitate a resolution.

57. Finally, Plaintiff advised that she was still waiting for the list of equipment to ensure accessibility (e.g. scanning tools) that could be requested from Defendant.

58. On or about February 18, 2022, Murray responded to Plaintiff's email. He confirmed that alternative formats for Dr. Wiener's course had been converted to Word documents and shared a link to assistive technology available for check-out.

13

59. Murray informed Plaintiff that she now had access to the Read and Write software, which was recently purchased for note-taking support, and included instructions for downloading it. He explained that SAS was awaiting notification of peer notetakers to assist with additional notes.

60. Murray also advised that he was coordinating with "ITS" to arrange an Adobe Pro license for Plaintiff, with access expected through Eagle Apps. Murray attached a list of assistive technology available for check-out and offered to arrange access to any additional software needed. He also introduced Micah Griffin, PhD ("Griffin") as a contact for further assistance and assured Plaintiff that measures have been taken to enhance the delivery of service.

61. Upon information and relief, Read and Write Gold is ordinarily used for people with cognitive difficulties, as opposed to the blind and visually impaired. While Murray likely believed he was accommodating Plaintiff, he was, in fact, not accommodating her as she does not have any cognitive deficits.

62. On or about February 20, 2022, Plaintiff emailed Murray again regarding her accommodations. She began her email by apologizing for not having time to review the emails received the prior Friday and confirms that she has downloaded the Word files.

14

63. Plaintiff advised Murray of her discussions with other students concerning the accessibility challenges and made a proposal to SAS on how Defendant NCCU could address the accessibility challenges in the future.

64. Plaintiff outlined the specific accommodations she was granted to address her accessibility challenges. She explained that she had been assigned a reader/scribe for five hours per week to assist with alternative text for photos.

65. For audio descriptions, Dr. Weiner was to provide limited assistance during class, and the reader/scribe would help with this as well.

66. Plaintiff expressed her frustration with SAS and Defendant NCCU's inability to provide reasonable accommodations that had never been an issue at other institutions.

67. Plaintiff confirmed that since Defendant NCCU could not actually provide note taking services, she would elect not to use that accommodation.

68. Plaintiff indicated that she would contact the state for assistance, that the state had software and equipment with which she could scan her textbooks, and noted that it could take up to thirty (30) days to receive the audio file of a scanned book.

69. On or about February 21, 2022, Murray confirmed receipt of Plaintiff's email and advised that she should be receiving her Eagle Apps that week to aid in review of information as well. Murray advised Plaintiff to contact him if she did not hear back from ITS and indicated he would follow up with them.

15

70. On or about February 14, 2022, Plaintiff attended an assistive technology seminar on campus. During the presentation, one of the contributors showed two items for the visually impaired.

71. Plaintiff requested to review a list of other Assistive Technology that was available to NCCU students.

72. On or about March 29, 2022, Plaintiff emailed Dr. Wiener to request that he send feedback and her grade for an interview project since she was unable to access TaskStream.

73. On or about March 30, 2022, Dr. Wiener responded that he would only share the grade and feedback if Plaintiff was still unable to access TaskStream and upload the required materials.

74. Frustrated, Plaintiff responded that, while she agreed her inability to access TaskStream was an SAS issue, the fact remained that she was unable to access course material, feedback, and educational resources due to Defendant NCCU's failure, inability and/or refusal to accommodate her.

75. Dr. Wiener forwarded Plaintiff's correspondence to the TaskStream coordinator and chastised Plaintiff for not letting him know that she could not access TaskStream.

76. Plaintiff was unaware that she needed to inform her individual professors about her accommodations.

77. In the summer of 2022 semester, Plaintiff took Statistics with Defendant J. Short and Introduction to Exceptional Children taught by Defendant M. Short.

78. On or about May 18, 2022, Plaintiff was notified that Defendant J. Short's statistics class would be asynchronous. This was not mentioned by her advisor prior to enrollment.

79. On or about May 25, 2022, Plaintiff emailed Defendant M. Short to ask if she had received her accommodation letter and to request a meeting regarding the syllabus.

80. Plaintiff also informed Defendant M. Short that she was having issues accessing Blackboard and could not start or complete assignments because of this.

81. Defendant M. Short responded that she "had students who used screen readers in the past who were able to access the modules".

82. Later that day, Plaintiff emailed Defendant J. Short to ask if he had received her accommodation letter and alerted him that she could not access Blackboard.

83. On or about May 26, 2022, SAS provided a list of Plaintiff's accommodations to her professors including access to audio books for course material, use of specialized/adaptive software for testing, requirements for text size to be used in written communication, use of headphones during tests, enlarged text on tests, use of a screen reader to complete tests, access to captioning of course videos,

17

double time on tests, permission to record class, and alternative text formats for photos, tactile models, and other visuals.

84. On or about May 26, 2022, Plaintiff and Defendant M. Short met to discuss accommodations in her class. They discussed a way to work around Plaintiff's inability to access most of the material on Blackboard, and Plaintiff suggested that someone evaluate Blackboard using a screen reader. Additionally, they discussed the issues with the PowerPoint slides, and M. Short said she would email them to Plaintiff.

85. On or about May 26, 2022, Plaintiff emailed Defendant Murray to express her concerns about accommodations, accessibility, and timelines. She highlighted problems with the projects in M. Short's class, noting they required strong vision and could not be completed without assistance.

86. The *Introduction to Exceptional Children* textbook was completely inaccessible with a screen reader and was only available as an eBook.

87. Plaintiff informed Murray that the textbook in Defendant M. Short's class was inaccessible. Murray reached out to Defendant M. Short to arrange a meeting

88. Eventually, Plaintiff was able to obtain an accessible version through BookShare several weeks after the course began. Despite the delay in access to an accessible textbook, Plaintiff was still required to take the final exam on schedule with everyone else.

89. Plaintiff also experienced challenges accessing the *Statistics* textbook. She explained the learning curve with Defendant J. Short's statistics class website and how, without training, completing assignments in a five-week course would be impossible.

90. Plaintiff made several suggestions to Defendant Murray to help address these problems.

91. On or about May 26th, 2022, Plaintiff emailed Defendant J. Short about issues accessing the "textbook". The textbook is hosted on a website, and websites are very difficult to navigate using a screen reader.

92. Plaintiff requested training on the site, which was never provided. She also expressed concern about the compressed timeline of the class.

93. On or about May 27, 2022, Plaintiff emailed Defendant M. Short to confirm she noticed the new section on Blackboard but had not yet had time to fully review it. She stated that she would notify Defendant M. Short immediately if she found a problem.

94. Later that day, Plaintiff emailed Defendant Murray and Defendant J. Short regarding the statistics class. She requested that the university either transfer her to a ten-week version of the class or extend her current class to ten-weeks.

95. Plaintiff reiterated that tables, charts, and other graphs would continue to be an issue for her to access, particularly since Defendant J. Short previously declined

to provide tactile formats for charts, tables, and graphs as outlined in her accommodation letter.

96. On or about May 27, 2022, Plaintiff had told Dr. Short she had limited time to review the new assignment tab, but she had located the PDF and felt she had enough information to proceed. However, several files were still missing, which Plaintiff noted in a previous email that day. The assignment was due that same day, and Dr. Short acknowledged that she had not uploaded all the necessary materials.

97. On or about May 28, 2022, Plaintiff met with Defendant M. Short to discuss accommodations. During the meeting, Defendant M. Short stated that the only rights Plaintiff had were those listed on her accommodation letter.

98. On or about May 28, 2022, Plaintiff met with Defendant J. Short. When she brought up the provision in her accommodation letter regarding tactile charts, tables, and graphs, Defendant J. Short told her he would not be providing this accommodation and had no alternative solutions.

99. Plaintiff emailed Defendant M. Short to report issues with the new assignment section. A worksheet required for the homework assignment had an incorrect link.

100. Plaintiff asked for a corrected link or for the worksheet itself. In a follow-up email, she explained ongoing problems completing the Universal Design for

Learning ("UDL") project. When Dr. M. Short created the accessible section, she failed to include all files made available to the rest of the class.

101. Plaintiff pointed out that she had to pay someone to extract the files needed to complete the assignment. She explained what files were missing and how it affected her ability to complete the work. She also brought up the lack of communication regarding quizzes, which had yet to be addressed.

102. On or about May 29, 2022, Defendant M. Short sent an email regarding the assignment Plaintiff was having issues with on May 27th, stating: "I placed all the documents for the UDL assignment in a PDF under the assignment tab. I asked whether you could access materials posted under the assignment tab before adding other documents."

103. Plaintiff emailed Defendant J. Short about the ongoing issues in his class. She explained in detail how screen readers function and why the tables on the textbook website, which were not formatted as actual tables, were inaccessible. She forwarded this email to Defendant Murray.

104. Plaintiff felt anxious, frustrated, and defeated mere weeks into the summer 2022 session due to the apathy of the Defendant University, its staff, and professors regarding her inability to access the Program.

105. On or about May 30, 2022, Plaintiff emailed Defendant J. Short about not receiving double-time on her quiz. She stated that she should have received two

hours instead of sixty minutes. Defendant J. Short's only solution was to delete the quiz and allow her to start over. Plaintiff chose to keep her original score, as redoing the assignment would set her even further behind in the already accelerated course.

106.   On or about May 31, 2022, Plaintiff emailed Defendant J. Short about a homework question that would not allow her to input an answer. She asked for assistance.

107.   Defendant M. Short granted WC Terrell Gray, ("Gray") the Associate Director of the SAS, access to Plaintiff's Blackboard shell so he could assist with accommodations.

108.   Defendant Murray emailed Defendant J. Short and Defendant M. Short regarding a meeting with the SAS office and Plaintiff to discuss the ongoing issues.

109.   During this meeting, Defendant M. Short commented that she and her husband, Defendant J. Short, have an uncle who is blind, and that this uncle said Plaintiff was being difficult.

110.   On or about June 1, 2022, Plaintiff emailed Defendant M. Short and Mr. Gray from the SAS office to request another meeting.

111.   On or about June 2, 2022, Defendant J. Short emailed Dr. Tikkun with instructions on how to access the textbook website being used in his class.

112.   Although Dr. Tikkun was not part of the SAS office, he offered to assist with the accessibility issues. Dr. Tikkun reviewed the J. Short's course website. He encountered the same problems Plaintiff did and noted that the website was entirely unusable with a screen reader.

113.   Plaintiff was forced to use the platform, even though other professors had chosen different, more accessible textbooks and resources.

114.   Plaintiff had to obtain her own tutor for the class to ensure that she could pass the course since Defendant NCCU failed to enforce implementation of her accommodations. This is why I was forced to obtain my own tutor for the class, so I had any chance of passing since NCCU was doing nothing about it.

115.   On or about June 3, 2022, Plaintiff emailed Defendant M. Short, Defendant J. Short, Mr. Gray, and Defendant Murray to inform them she had contacted the Nevada Disability Law Center ("NDLC") for advocacy support due to the ongoing issues with Defendant NCCU's failure to provide reasonable accommodations affording Plaintiff equal access to the Program.

116.   Following this communication, Defendant Murray promptly sent out more than ten emails working on the matter.

117.   Meanwhile, Defendant M. Short was becoming more hostile towards Plaintiff, even though Plaintiff was simply attempting to access her education to the level

of her non-disabled peers. Defendant M. Short's responses to Plaintiff were becoming passive-aggressive and, in many instances, blatantly rude.

118. For example, on or before June 3, 2022, Plaintiff emailed Defendant M. Short expressing confusion as to why someone from the SAS office had to be present for Defendant M. Short to explain how to complete an assignment in the class. Upon information and belief, Plaintiff did not receive a response.

119. On or about June 3, 2022, Defendant Murray emailed Defendant M. Short to inform her that he also could not locate the upload button for the assignment and asked for assistance in finding it.

120. On or about June 4, 2022, Plaintiff emailed Defendant J. Short stating she was still waiting for an answer to a question she had originally asked on May 28, seven days earlier. Defendant J. Short replied that the issue had been resolved.

121. Plaintiff responded with confusion, stating that no information had been provided to her, and she had no idea what he meant by "resolved".

122. On or about June 4, 2022, Plaintiff emailed Defendant M. Short asking for assistance locating assignments on Blackboard. She expressed confusion about the due dates and where assignments were located.

123. In another email to Defendant M. Short, Plaintiff compared the information in her accessible section to that available to the rest of the class. She identified conflicting instructions, missing content, and inconsistent information.

124.  Plaintiff emailed Defendant J. Short again to express appreciation for a document he had provided but noted it did not address her question from May 28. She explained that questions will come up from time to time and will require his response, even if they are not related to accessibility. The original question remained unanswered.

125.  Plaintiff emailed both Defendant M. Short and Defendant J. Short about ongoing issues with receiving emails in large print. She reminded them that this accommodation is protected under the ADA and was clearly listed in her accommodations letter.

126.  Defendant M. Short sent an email to Plaintiff chastising her for the continued issues. She referenced previous confusion earlier in the term. Plaintiff clarified that the documents were inaccessible. Dr. M. Short did not follow up, or upload any additional assignments to the accessible section, preventing Plaintiff from completing her work, although the rest of the class had full access.

127.  Defendant M. Short asserted that Plaintiff had been sufficiently informed of due dates and expectations, despite the discrepancies Plaintiff had already pointed out.

128.  Defendant M. Short instructed Plaintiff not to bring any more accommodation concerns directly to her and to instead address them only with the SAS office.

She stated, "as I indicated before, former students who used screen readers were able to access course content with the current course set up."

129. A few days earlier, during a meeting with her advisor, Dr. Tikkun, Plaintiff was told that several screen reader users had complained to him about the inaccessibility of Defendant M. Short's class.

130. Defendant M. Short then shared a video tutorial to help Plaintiff navigate Blackboard, but Plaintiff had already explained that her Blackboard course was inaccessible. Additionally, Dr. Short admitted in her email that she had not provided Plaintiff with an accessible version of an assignment that was due the next day on June 5.

131. Plaintiff's mental health was severely declining due to the stress of dealing with Defendants M. Short, J. Short, and the University. She did not want to get out of bed.

132. On or before June 5, 2022, Plaintiff emailed Defendant M. Short to inform her that she had only just learned about the "interview project" the day before. She explained that this was due to a lack of accommodation and informed Defendant M. Short that the assignment would only be a couple of hours late.

133. On or before June 7, 2022, Plaintiff emailed Defendant M. Short in response to being chastised for missing a meeting. Plaintiff included a timeline of events from the past several days. She explained that she had informed Defendant M.

Short that she could not attend the meeting because Defendant M. Short had insisted it be about accommodations. Plaintiff was initially told the meeting would focus on class content and assignment-related questions.

134. She had already notified Defendant M. Short, Defendant Murray, and Mr. Gray that any discussion about accommodations would need to wait until she secured an advocate from the NDLC.

135. On or about June 8, 2022, Plaintiff emailed Defendant J. Short again regarding a class content question and forwarded her original email from June 4. She also sent a follow-up message to Defendant Murray and Mr. Gray requesting contact information for Defendant J. Short's supervisor. The plaintiff explained that she wanted to raise concerns about Dr. Short's failure to assist with course content.

136. On or about June 8, 2022, Plaintiff emailed Defendant J. Short, Defendant Murray, and Mr. Gray with an update on the ongoing accessibility issues in her statistics class. She described the continued challenges and suggested possible solutions. She also sent a separate email to Defendant Murray and Mr. Gray detailing her concerns in both classes. Later that day, Plaintiff again emailed Defendant Murray, Mr. Gray, and Defendant J. Short to let them know she was unable to complete her Chapter 3 quiz due to time limitations. She explained the reasons for the delay and requested that the time restrictions be removed.

Case 1:25-cv-00508    Document 1    Filed 06/25/25    Page 27 of 45

137.   On or about June 9, 2022, Defendant Murray emailed Plaintiff requesting a list of the accessibility issues she was experiencing. He also asked her about other classes she had been able to access successfully and shared some updates regarding efforts to improve accommodations.

138.   On or about June 10, 2022, Plaintiff requested additional time for her exam. Defendant J. Short responded that he was confident she could complete the exam within the time provided.

139.   The plaintiff attempted to do so but was unable to finish due to the same accessibility issues described in her earlier emails.

140.   On or about June 10, 2022, Defendant M. Short emailed Plaintiff a summary of all outstanding assignments in her Introduction to Exceptional Children's course.

141.   On or about June 11, 2022, Defendant M. Short emailed Plaintiff a list of assignments along with their deadlines. The plaintiff responded that the deadlines would need to be adjusted due to the ongoing lack of accommodation and persistent accessibility issues.

142.   On or about June 11, 2022, Plaintiff emailed Defendant Murray and Mr. Gray from the SAS office with a breakdown of ongoing issues related to Defendant J. Short's class. She also emailed Defendant J. Short again to request that he reset the exams for chapters one, two, and three.

143. She reminded him that if a student does not finish within the allotted time, the test must be reset, and the student must start over.

144. On or about June 12, 2022, Plaintiff emailed Defendant J. Short again regarding the exam reset. She noted that it was already 3:00 PM her time and that the test would take at least six hours, so she needed to begin as soon as possible. Defendant J. Short eventually reset the exam, but Plaintiff had to start over. In her email to Defendant J. Short, Defendant Murray, and Mr. Gray, she explained that had the issue been resolved earlier, there would have been no need to reset or retake the test.

145. On or about June 13, 2022, Plaintiff emailed Defendant Murray and Mr. Gray to report that some of the files for Introduction to Exceptional Children now appeared more accessible after being reworked by an accessibility company. She noted that this improvement occurred nearly three weeks into a five-week course.

146. On or about June 13, 2022, Mr. Gray emailed Plaintiff to gather more information about the issues she was having with the online textbook used in the statistics class. He stated that he was in direct contact with the publisher regarding these concerns.

147. On or about June 13, 2022, Defendant Murray emailed Plaintiff with details about an upcoming meeting scheduled for June 15, 2022, to address ongoing issues.

148. On June 15, 2022, SAS issued another accommodation to Plaintiff's professors and informed them that Plaintiff was granted extended time on all quizzes, tests, and exams, including online assessments and pop quizzes, for the Summer 2022 course EDGR 5910 CLAS OL2. The letter encourages professors to reach out to SAS for assistance in creating accessible learning experiences and suggests universal design strategies to minimize barriers, such as posting course materials online and providing various options for students to demonstrate their understanding. It emphasizes the importance of maintaining confidentiality regarding the student's information and compliance with relevant laws. Professors are instructed to confirm receipt of the letter by providing an electronic signature in the Eagle Accommodate portal, and they are provided with contact information for SAS for any inquiries.

149. On or about June 15, 2022, Defendant Murray emailed all participants with a summary of his interpretation of the meeting held between Plaintiff, Defendant M. Short, Defendant J. Short, Defendant Murray, and Mr. Gray. Later that day, he sent a follow-up email with a link to the Zoom meeting recording.

150. On or about June 15, 2022, Plaintiff emailed Defendant Murray, Mr. Gray, Defendant J. Short, and Defendant M. Short to inform them that she was reviewing her notes from the meeting alongside Defendant Murray's summary and would notify them if she found any discrepancies.

151. On or about June 16, 2022, Plaintiff emailed Defendant Murray, Mr. Gray, and Defendant M. Short to explain why certain parts of the course textbook were problematic. She stated that the book was only accessible through a device that played audio and noted that numerous online complaints also described the book as inaccessible. Later that day, she sent another email expressing her frustration that Defendant M. Short was allowed to abandon the agreement made in the first week of class.

152. Defendant M. Short informed Plaintiff just eleven days before the final that she would now be required to take the exam on the same day as the rest of the class, contrary to the prior arrangement.

153. This left Plaintiff with just eleven days to prepare for an exam that she expected to take in three weeks. The plaintiff felt bullied and defeated and began to have trouble getting out of bed.

154. On or about June 16, 2022, Plaintiff emailed Defendant J. Short, Defendant Murray, and Mr. Gray regarding ongoing issues that persisted even after the previous day's meeting. She reminded Defendant J. Short about the agreements made during the meeting and requested that he open the sections they had discussed.

155. On or about June 21, 2022, Plaintiff emailed Defendant M. Short, Mr. Gray, and Defendant Murray regarding continued issues with completing assignments.

156. On or about June 22, 2022, Plaintiff emailed Defendant M. Short to confirm the list of all outstanding items she needed to complete to finish the course.

157. Plaintiff was exhausted and could not sleep from stress caused by Defendants.

158. On or about June 26, 2022, Plaintiff emailed Defendant J. Short to confirm what was still required from her to complete the course.

159. On or about July 1, 2022, Plaintiff emailed Defendant M. Short to explain that although she had experienced several issues while completing the UDL project, it had now been submitted. In the email, she described the various problems she encountered throughout the process.

*Fall 2022*

160. On or about August 1, 2022, Plaintiff emailed Dr. Wiener to set up a meeting to discuss accommodations.

161. On or about August 2, 2022, Defendant Murray provided a copy of Plaintiff's accommodation letter via email and assured Plaintiff that the same was provided to her professors.

162. On or about August 8, 2022, Dr. Wiener informed Plaintiff that he would be contacting Defendant Murray and Gray to assist with video descriptions and alt labels.

163. On or about August 10, 2022, Defendant M. Short emailed Plaintiff a breakdown of her scores during her summer course and notified Plaintiff that she had submitted a change of grade from an incomplete to a grade of B.

164. On or about August 19, 2022, Plaintiff emailed Dr. Tikkun regarding her accommodations and difficulties accessing the same. She also notified him that she and three other visually impaired students were having difficulties with getting Defendant M. Short to implement her accommodations.

165. Dr. Tikkun responded that he would share the message with SAS staff.

166. On or about August 20, 2022, Plaintiff notified Defendant Murray that Dr. Tikkun had changed the shell for his classes, and she was unable to navigate it using Fusion, the screen reading software she used.

167. In this email, Plaintiff again asked for JAWS training with a competent provider.

168. The Plaintiff reiterated her need for training in Fusion, which she had been requesting for over a year.

169. On or about August 23, 2022, Gray provided Plaintiff with a link to access Fusion training.

170. Ultimately, Plaintiff and Dr. Tikkun decided to handle the training issue within the visual impairment department.

171. On or about September 4, 2022, Dr. Wiener emailed Plaintiff to ask which videos needed an audio description and requested a Zoom meeting with Plaintiff to discuss the same.

172. Plaintiff and Dr. Wiener set a meeting for later in the week.

173. On or about September 5, 2022, Plaintiff emailed Dr. Wiener to explain her frustrations with the ongoing barriers she was encountering at NCCU, including, *inter alia*, NCCU's failure to provide staff with proper training to implement her accommodations and the lack of audio description for Dr. Wiener's video after four weeks of requests.

174. Dr. Wiener notified Plaintiff that he would no longer be using videos in his class.

175. On or about September 6, 2022, Dr. Wiener notified Plaintiff and Defendant Murray that he would be suspending the meeting scheduled for Thursday and would instead depend upon SAS to provide an audio description of the video.

176. Later, Plaintiff emailed Dr. Wiener and Defendant Murray to express her confusion as at least six videos were used in Dr. Wiener's class that night, all without an audio description.

177. Defendant Murray replied that the students in Plaintiff's courses should no longer utilize the videos as they had been deemed inaccessible and should not be part of any student's curriculum.

178. On or about September 7, 2022, Plaintiff notified Dr. Wiener and Defendant Murray that she could not read any of the previous emails as they were not provided in a large enough font size.

179. Dr. Wiener responded that he would cease using videos in class.

180. Defendant Murray responded that he had provided materials to Dr. Wiener to make the videos accessible.

181. On or about September 14, 2022, Plaintiff requested an in-person meeting with Defendant Murray on either Saturday, September 17, 2022, or Saturday, October 1, 2022.

182. Defendant Murray proposed times during the week that he was able to meet.

183. On or about September 16, 2022, Plaintiff clarified that she would not be able to meet in-person during the week as she worked full-time and lived in Las Vegas, Nevada.

184. On or about December 9, 2022, Plaintiff emailed Dr. Tikkun and Dr. Wiener with an offer to review their course materials to ensure they were compliant with the needs and accommodations of visually impaired students, including checking for large print, correct file format, and disability tags.

*Spring 2023*

185. In the Spring of 2023, Plaintiff was enrolled in a digital media class with Defendant Mutisya.

186. Plaintiff emailed Defendant Mutisya several times to set up an appointment to discuss her accommodation letter and needs but never received a response.

187. Finally, Plaintiff was able to speak with Defendant Mutisya when she called him during his office hours.

188. Plaintiff noted that Defendant Mutisya's Blackboard shell was completely inaccessible.

189. Upon information and belief, Defendant Mutisya refused to change the shell.

190. Finally, it was decided that Defendant Mutisya would provide materials to Plaintiff in a series of Word documents.

191. This process was prolonged. Upon receiving the materials, it was evident that Defendant Mutisya had copied and pasted the Blackboard material into a Word document without regard for formatting. This rendered the materials almost as unusable for Plaintiff as the Blackboard shell.

192. On or about January 3, 2023, Plaintiff notified Defendant Murray and Mr. Gray that her accommodations for Spring 2023 did not match her accommodations from Fall 2022.

193. Mr. Gray responded that no changes had been made to Plaintiff's accommodations.

194. Plaintiff could not fully describe what accommodations were changed due to the continued inaccessibility of the SAS website.

195.  Mr. Gray stated he would follow up with the Accommodate representative to ensure their website was fully accessible. He also offered to meet with Plaintiff to discuss the accommodations.

196.  On or about January 4, 2023, Plaintiff offered two times to meet with Mr. Gray via Zoom and renewed her concerns about the University's continued failure to deliver her accommodations.

197.  Mr. Gray insisted that Defendant Murray provide the link rather than Plaintiff.

198.  Upon information and belief, this meeting never occurred.

199.  On or about January 12, 2023, Plaintiff was approved for an accommodation of receiving assistance from her advisors to upload assignments to the Task Stream platform for EDEC 5660 and EDIT 5850.

200.  When Plaintiff expressed confusion that only one of her accommodations was noted, Mr. Gray clarified that this was a supplemental request and was separate from her other accommodations.

201.  Plaintiff requested the following options due to Dr. Mutisya and the University's failure to provide her accommodations:

   a.  Drop Plaintiff from the digital media course and allow her to take it over the summer as an independent class;

   b.  Have the course materials ready by March 6, 2023, and partially refund Plaintiff tuition;

c. Provide Plaintiff with a tutor for the course to assist with the barriers; and

d. Allow her to speak with Dean Beard.

202. All these requests were ignored by Defendant Murray, Mr. Gray, and Jeffrey Warren, the Associate Dean for NCCU's School of Education.

203. On or before February 1, 2023, Dr. Mutisya emailed Mr. Gray and copied Plaintiff, it stated "as proposed the content was only the course description "… and it was not designed to be offered for Visually Impaired."

204. Plaintiff continued to fall behind her classmates as Dr. Mutisya, Defendant Murray, and Mr. Gray continued to volley whose responsibility it was to provide Plaintiff with her accommodations.

205. During the time of enrollment, Plaintiff requested reasonable accommodations from Defendant to ensure equal access to educational programs and facilities, specifically the consistent use of screen readers; use of enlarged text; captioning of course videos; permission to record classes; access to accessible course materials; alternative formats including audio descriptions of videos; extended time on tests, quizzes, and exams; and use of specialized/adaptive software such as JAWS/Fusion, and Desktop Magnifiers.

206. Despite Plaintiff's eligibility for such accommodations under the ADA and Section 504, Defendant failed to provide the requested accommodations.

207. Defendant's failure to provide reasonable accommodations has denied Plaintiff equal access to educational opportunities and benefits, in violation of Plaintiff's rights under the ADA and Section 504.

## CLAIMS FOR RELIEF

### COUNT I: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
(Defendants NCCU and Defendant Board of Governors)

208. Plaintiff re-alleges and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

209. Defendant NCCU is a public entity subject to the public accommodation provision of Title II of the ADA.

210. Plaintiff is a qualified individual with a disability as defined by the ADA. Specifically, Plaintiff is visually impaired, and her visual impairment substantially limits one or more of her major life activities.

211. Plaintiff has a record of being visually impaired and notified Defendant NCCU of her impairment.

212. Defendant NCCU engaged in discrimination prohibited by the ADA when it failed to make reasonable modifications to its policies, practices and/or procedures.

213. The modifications and/or accommodations that Plaintiff requested to access her program at NCCU would not have fundamentally altered the nature of her program.

214. The modification and/or accommodations requested by the Plaintiff would not have placed an undue burden on Defendant NCCU.

215. Defendant NCCU unlawfully denied Plaintiff participation in and/or the benefits of the services, programs or activities that her nondisabled peers were afforded.

216. Defendant NCCU failed to provide a reasonable accommodation to Plaintiff even though the requested accommodations were necessary to ensure that Plaintiff had equal access to her program.

217. Defendant NCCU did not demonstrate that provided the accommodations Plaintiff requested would impose an undue financial or administrative burden to the University.

218. Defendant NCCU discriminated against Plaintiff because of her disability.

219. Due to Defendant NCCU's actions and/or omissions, the Plaintiff is entitled or remedies and damages, including, without limitation, injunctive relief and monetary compensation.

220. Defendant's actions and omissions constitute a failure to provide reasonable accommodations to Plaintiff, a qualified individual with a disability, in violation of the ADA.

<u>COUNT II: VIOLATION OF SECTION 504</u>
<u>OF THE REHABILITATION ACT</u>
(Defendant NCCU)

221. Plaintiff re-alleges and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

222. Defendant NCCU is the recipient of federal funds subject to the requirements of Section 504.

223. Plaintiff is an individual with a disability as defined by Section 504. Plaintiff has a physical impairment that substantially limits one or more major life activities. She has a record of having such an impairment and is regarded as having such an impairment.

224. Plaintiff was otherwise qualified to participate in Defendant NCCU's programs and activities. Plaintiff met the essential eligibility requirements for participation in her program, with or without reasonable accommodations.

225. Plaintiff was excluded from participation in, denied the benefits of, or subjected to discrimination under the university's programs or activities solely because of her disability.

226. Defendant NCCU unlawfully denied Plaintiff's request for reasonable accommodations that were necessary for Plaintiff to have equal access to the Program.

227. Defendant failed to provide Plaintiff with accessibility to the program by denying Plaintiff's request for reasonable accommodations and not offering any other alternative method for Plaintiff to access her materials.

228. Defendant's actions and omissions constitute discrimination against Plaintiff, a qualified individual with a disability, in violation of Section 504 of the Rehabilitation Act.

### COUNT III: SUPERVISOR LIABILITY
(Defendant Ackall)

229. Plaintiff re-alleges and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

230. Defendant Ackall was responsible for ensuring compliance with the ADA and Section 504 within their respective roles at Defendant NCCU.

231. Defendant failed to take appropriate actions to ensure that Plaintiff received the accommodations necessary to access her education, despite being aware of her disability and the barriers she faced.

232. The actions and omissions of Defendant directly contributed to the discrimination and harm suffered by Plaintiff.

## COUNT IV: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (All Defendants)

233.   Plaintiff re-alleges and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

234.   Defendants' actions and omissions, including the repeated denial of reasonable accommodations and failure to address Plaintiff's accessibility concerns, were extreme and outrageous.

235.   Defendants acted with reckless disregard for the likelihood that their conduct would cause Plaintiff severe emotional distress.

236.   As a direct and proximate result of Defendants' conduct, Plaintiff has suffered severe emotional distress, including anxiety, depression, and other psychological harm.

*Or in the alternative,*

## COUNT V: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (All Defendants)

237.   Plaintiff re-alleges and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

238.   Defendants owed Plaintiff a duty of care to provide reasonable accommodations and ensure equal access to educational opportunities.

239. Defendants breached this duty by failing to provide the accommodations necessary for Plaintiff to access her education and by failing to address her accessibility concerns.

240. Defendants' breach of duty was the direct and proximate cause of Plaintiff's emotional distress, which was foreseeable given the nature of the harm caused by their actions and omissions.

241. As a result of Defendants' negligence, Plaintiff has suffered emotional distress, including anxiety, depression, and other psychological harm.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Declare that Defendant NCCU's actions and/or omissions violated Plaintiff's rights under the ADA and Section 504 of the Rehabilitation Act.

2. Declare that Defendant UNC Board of Governors actions and/or omissions violated Plaintiff's rights under the ADA and Section 504 of the Rehabilitation Act

3. Reimbursement of tuition and fees paid to Defendant NCCU during Plaintiff's tenure at the University.

4. Issue an order requiring Defendant NCCU to create and/or revise and review their policy on ensuring the visually impaired have access to course materials and other

information, including how the visually impaired can access course materials that ordinarily require review of illustrations, diagrams, models or other visual aids.

5. Award Plaintiff compensatory damages for the harm caused by Defendants' violations.

6. Grant Plaintiff attorney's fees, litigation expenses, and costs pursuant to 42 U.S.C. § 12205 and 29 U.S.C. § 794a.

7. Grant such other and further relief as the Court deems just and proper.

JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted, this is 24th day of June, 2025.

> THE LAW OFFICE OF NEUBIA L. HARRIS, PLLC
> /s/ Neubia L. Harris
> Neubia L. Harris
> N.C. Bar No.: 42069
> 312 W. Millbrook Road, Ste. 141
> Raleigh, NC 27609
> (919) 526-0500 (telephone)
> (919) 589-3935 (facsimile)
> neubia@neubiaharrislaw.com
> *Attorneys for Plaintiff*